# United States Court of Appeals for the Federal Circuit

---

**ONESUBSEA IP UK LIMITED, ONESUBSEA UK LIMITED,**

*Plaintiffs/Counterclaim Defendants-Appellees*

**CAMERON INTERNATIONAL CORPORATION, ONESUBSEA LLC,**

*Counterclaim Defendants-Appellees*

**v.**

**FMC TECHNOLOGIES, INC.,**

*Defendant/Counterclaimant-Appellant*

---

2022-1099

---

Appeal from the United States District Court for the Southern District of Texas in No. 4:16-cv-00051, Judge Alfred H. Bennett.

---

Decided: May 23, 2023

---

WILLIAM H. BURGESS, Kirkland & Ellis LLP, Washington, DC, argued for OneSubsea UK Limited, OneSubsea IP UK Limited, Cameron International Corporation, and OneSubsea LLC. Also represented by GREGG LOCASCIO, SEAN M. MCELDOWNEY, JOHN C. O'QUINN.

MICHAEL VINCENT, Fish & Richardson P.C., Dallas, TX,

argued for FMC Technologies, Inc.  Also represented by MATT COLVIN, BRET THOMAS WINTERLE; JOHN A. DRAGSETH, Minneapolis, MN.

————————————

Before MOORE, *Chief Judge*, CLEVENGER and DYK, *Circuit Judges*.

CLEVENGER, *Circuit Judge*.

FMC Technologies, Inc. ("FMC" or "Defendant") appeals from the final judgment of the United States District Court for the Southern District of Texas denying its motion under 35 U.S.C. § 285 for attorneys' fees and non-taxable costs. *OneSubsea IP UK Ltd. v. FMC Techs., Inc.*, No. 4:16-CV-51, 2021 WL 5121651 (S.D. Tex. Sept. 27, 2021).  Because the district court did not abuse its discretion in denying FMC's § 285 motion, we affirm.

BACKGROUND

FMC and OneSubsea IP UK Limited, OneSubsea UK Limited, Cameron International Corporation, and OneSubsea LLC (together, "OSS" or "Plaintiffs") are competitors in the subsea oil and gas exploration and extraction industry. Both parties own patents that cover various structures for subsea oil and gas recovery, known in the industry as "Christmas trees" or "trees."  The structures took their name from their original appearance: mounted at the top of a well as the well exits the earth and composed of an assembly of pipes with attached valves and fittings, the structures loosely resembled a Christmas tree.  Modern subsea trees are housed in generally square structures.

OSS brought suit with jury demand in the United States District Court for the Eastern District of Texas against FMC in March 2015, alleging that FMC's Enhanced Vertical Deepwater Tree equipped with FMC's Retrievable Choke and Flow Module ("Flow Module")

infringes ninety-five claims across ten OSS patents.[1] FMC asserted counterclaims against OSS alleging infringement of twenty-nine claims across two FMC patents.[2] FMC moved to transfer the case to the Southern District of Texas, a more convenient forum where both parties maintained their headquarters. In December 2015, FMC's transfer motion was granted over OSS's objection and assigned to Judge Nancy Atlas.

The OSS patents relate to the subsea recovery of production fluids from an oil or gas well having a Christmas tree. *See, e.g.*, '687 Patent col. 1 ll. 20–21. The OSS patents explain that in some circumstances, it is desirable to conduct subsea processing of fluids that pass through an operating Christmas tree, such as by adding chemicals to and separating water and sand from the hydrocarbons. *See, e.g.*, *id.* col. 5 l. 66–col. 6 l. 3. In other circumstances, it is desirable to increase the pressure of the fluids flowing through the production line, by addition of a pressure-boosting pump. *See, e.g.*, *id.* col. 1 ll. 47–52. Installing the required structure to achieve such subsea processing is a difficult operation, requiring cutting existing pipes, installing new pipes, and risking environmental hazards from release of fluids into the ocean. *See, e.g.*, *id.* col. 1 ll. 52–55. The OSS patents describe and claim various apparatus and methods for diverting fluids in a Christmas tree to enable subsea processing of the fluids. *See generally id.* The infringement question in the suit boiled down to

---

[1] Patent Nos. 6,637,514, 7,111,687, 8,066,076, 8,122,948, 8,272,435, 8,281,864, 8,540,018, 8,573,306, 8,746,332, and 8,776,893 (together, the "OSS Patents").

[2] FMC's counterclaims were later severed and resolved in OSS's favor. *See FMC Techs., Inc. v. OneSubsea IP UK Ltd.*, No. 18-2459, 2018 WL 5014147 (S.D. Tex. Oct. 16, 2018).

whether fluid flows through FMC's accused device as required by the OSS Patents.

Claim 1 of the '687 Patent, which is representative for purposes of this appeal and which defines specific claimed flowpaths, reads:

> A tree for a well, having: a first flowpath; a second flowpath; and a flow diverter assembly providing a flow diverter means to divert fluid from a first portion of a first flowpath to the second flowpath, and a means to divert fluids returned from the second flowpath to a second portion of the first flowpath for recovery therefrom via an outlet of the first flowpath, wherein the first portion of the first flowpath, the second flowpath and the second portion of the first flowpath form a conduit for continuous passage of fluid; wherein the flow diverter assembly is located in the first flowpath and separates the first portion of the first flowpath from the second portion of the first flowpath.

col. 17 ll. 8–19.

The parties could not agree on the precise meaning for the many iterations of "divert" in the asserted claims. OSS argued that the term needed no construction, but if construction was necessary, the term should be understood as "directing" or "direct," as described in OSS's tutorial. J.A. 2293, 2299. FMC argued that the references to diverting or divert should be understood to require "directing to an alternate passage" or "direct to an alternate passage," respectively. J.A. 2293, 2299. After conducting a *Markman* hearing, the district court issued its *Markman* Order on July 12, 2016, construing "[t]he term 'divert' or a form of that word . . . to mean that 'the direction of the fluid's flow is forced to change from its current flowpath to a different flowpath.'" J.A. 2773–74. The district court emphasized that mere changes in direction in a flowpath did not satisfy the "divert" claim limitations: in order to "divert"

under the claims, the fluid's flow must be forced from one flowpath to another flowpath. J.A. 2774. The district court, however, did not elaborate on what it meant by "current flowpath," and the parties had not mentioned the concept of a current flowpath in the *Markman* hearing.

Three weeks after the district court's *Markman* Order, FMC moved for summary judgment of noninfringement. According to FMC, its accused tree has only one continuous flowpath, running from the wellhead through the tree to the production line, and, consequently, "OSS cannot show any change from a current flowpath to a different flowpath." J.A. 2787. FMC produced an image of its subsea system structure to illustrate the flowpath within its system, as shown below. J.A. 2794–95 ("Flow to the PRODUCTION LINE" and "Flow from the WELLHEAD" added for clarity).



OSS opposed FMC's summary judgment motion, arguing that a genuine issue of material fact existed as to whether FMC's accused tree infringes the "divert" limitations of the asserted claims. OSS supported its argument with an expert declaration by Mr. Boyadjieff that referred

to FMC's internal documents and diagrams to identify the alleged "current" and "different" flowpaths in the accused FMC tree.  J.A. 6504–06.  OSS argued specifically: (a) the flowpath in FMC's accused device from the wellhead to its multi-bore hub is the "first portion of a first flowpath" (i.e., the "current flowpath" in the district court's definition of "divert"), (b) the flowpath leaving from and returning to FMC's multi-bore hub is the "second flowpath" (i.e., the "different flowpath" in the district court's definition of "divert"), and (c) the flowpath from FMC's multi-bore hub to the production line is the "second portion of the first flowpath."  OSS's expert's mapping of the district court's claim construction onto FMC's accused tree emphasized that FMC's multi-bore hub serves to force the fluid's flow from the current flowpath to the different flowpath (i.e., diverts the fluid's flow).

Moreover, OSS stressed that the claims require a "continuous passage of fluid" from the first portion of the first flowpath through the second flowpath and through the second portion of the first flowpath, meaning FMC could not escape infringement just because its accused device had a continuous flowpath.  By mapping the flow of fluid through FMC's accused tree onto claim 1 of the '687 Patent, OSS at least believed that it had raised a genuine issue of material fact as to whether FMC's accused tree infringes the asserted claims.

Before the district court acted on FMC's summary judgment motion, the parties learned of some results in co-pending proceedings at the United States Patent and Trademark Office.  FMC had previously filed for *inter partes* review ("IPR") for many of the OSS Patents, and OSS had suggested that a stay of the district court proceedings might be prudent.  On August 9, 2016, FMC advised the district court that the Patent Trial and Appeal Board ("PTAB") had instituted IPR proceedings on all asserted claims for three of the OSS Patents, with an institution decision on a fourth challenged patent expected soon.

J.A. 6034. As such, FMC noted that ordinarily a stay of district court proceedings would be agreeable but was unnecessary in the light of the pending summary judgment motion. J.A. 6035–36. FMC argued that, on the record already before the district court, no reasonable jury could find infringement by FMC. J.A. 6035. FMC urged the district court to grant its motion for summary judgment of noninfringement without delay. J.A. 6035, 6040.

On August 30, 2016, the district court, having considered the record before it and the ongoing PTAB proceedings, entered an order staying proceedings in the case. Regarding FMC's argument that it would be prejudiced by a stay because the district court "should grant FMC's Motion for Summary Judgment without delay," the district court declined to grant FMC's motion and instead responded: "This argument is unpersuasive because it is unclear from the current record whether FMC's dispositive motion would be granted." J.A. 6582.

The case remained stayed for nearly three years, during which the PTAB invalidated seventy-six claims of the OSS Patents challenged by FMC, and this court affirmed the PTAB decisions. *See OneSubsea IP UK Ltd. v. FMC Techs., Inc.*, 771 F. App'x 482, 482–83 (Fed. Cir. 2019). The claims now asserted here were not at issue in the IPR proceedings. On July 22, 2019, the district court lifted the stay and reinstated the case. Thereafter, the district court ordered the parties to mediate their dispute, and when that effort failed to resolve the case, the parties and the district court discussed the going-forward options at a pre-trial hearing on February 11, 2020, which included whether to proceed with FMC's validity challenges or to focus on FMC's infringement challenge. J.A. 6919–29.

At the hearing, OSS reminded the district court that FMC's motion for noninfringement had been briefed originally in 2016, when OSS argued that the motion should be denied because a genuine issue of material fact exists.

J.A. 6925.  In response, the district court agreed that OSS "had an expert to raise a fact issue."  J.A. 6926.  Because OSS viewed FMC's 2016 motion as based only on attorney argument, OSS argued that additional expert discovery was necessary to refresh FMC's 2016 motion.  *Id.*  FMC's counsel doubted the need for more discovery, pointing to the 3,200 record pages illustrating differences between designs of the accused device and the patented devices.  J.A. 6932–34.  In response, the district court stated, "And you really think I'm going to be able to grant summary judgment on that?"  J.A. 6934.  The hearing concluded after the parties agreed to additional briefing that would lead to a renewed summary judgment motion by FMC.  For reasons unexplained in the record, OSS retained a different expert, Mr. Voss, to provide support for its opposition to FMC's renewed motion for summary judgment of noninfringement.

FMC's renewed motion for summary judgment, filed on March 24, 2020, repeated the arguments made in its original motion, asserting that its accused tree had but a single continuous flowpath through it, and thus did not meet the "divert" limitations, which require a different flowpath.  OSS's opposition brief relied entirely on Mr. Voss's expert report, which essentially repeated Mr. Boyadjieff's earlier analysis and arguments that the Flow Module was a separate flowpath, but placed strong emphasis on the fact that the Flow Module in FMC's tree is retrievable, meaning that it can be removed and replaced with different structures.

FMC's reply to OSS's opposition brief focused on OSS's emphasis on the retrievability of the Flow Module, as stated in Mr. Voss's expert report.  FMC characterized Mr. Voss's infringement theory as depending on the retrievability of the Flow Module, because OSS needed to analyze the FMC tree without the Flow Module in order to find the required flow diverter means (alleged to be FMC's multi-bore hub) but needed to analyze the FMC tree with the Flow Module installed to find the required second

flowpath and thus infringement.  J.A. 9484.  FMC argued that Mr. Voss's treatment of FMC's tree and Flow Module as separate structures violated the parties' stipulated construction of the patent term "tree."  J.A. 9484–85.  The agreed construction of "tree" was "an assembly of pipes, valves and fittings installed between the wellhead and the [production line]" and does not contemplate breaking a tree into separate parts.  J.A. 2292.  FMC argued that Mr. Voss's violation of the definition of tree was even more egregious, because during his deposition, when Mr. Voss was asked, "[w]hen you were performing your analysis in this case, did you use and apply the agreed construction of the term 'tree?,'" he replied, "I must admit, I don't remember seeing a stated definition for 'tree.'"  J.A. 9504.  Consequently, FMC argued that Mr. Voss's expert report amounted to "*ipse dixit* opinions with no guiding principles or methods."  J.A. 9492.

Five days after FMC filed its response to OSS's opposition brief, the district court sua sponte issued an order, which noted that FMC's response appeared to challenge the admissibility of Mr. Voss's expert report and ordered FMC to move separately to exclude the expert report if FMC challenged its admissibility.  J.A. 9868–69.  In due course, FMC moved to exclude Mr. Voss's expert report under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  J.A. 9870–99.

On December 10, 2020, the district court entered a combined Memorandum and Order addressing and granting FMC's pending motions to exclude OSS's expert's report and to grant summary judgment of noninfringement.  *OneSubsea IP UK Ltd. v. FMC Techs., Inc.*, No. CV 4-16-0051, 2020 WL 7263266, at *9 (S.D. Tex. Dec. 10, 2020).  The district court agreed with FMC that OSS's expert's analysis was based on the Flow Module as a separate assembly from the tree, which violated the definition of "tree" and failed to identify the different flowpath required by the

10   ONESUBSEA IP UK LIMITED v. FMC TECHNOLOGIES, INC.

"divert" limitations of the OSS Patents. *Id.* at *5, *9. The district court found that "Voss's misapplication of the established claim constructions in this case render his opinions excludable under Rule 702 and *Daubert* as irrelevant and not likely to assist the trier of fact." *Id.* at *6. Without Mr. Voss's evidence, the district court found that "OSS has failed to present admissible evidence of more than a single flowpath through . . . [FMC's Enhanced Vertical Deepwater Tree equipped with FMC's Flow Module] such that the fluid flow can be forced to change direction from its current flowpath to a different flowpath." *Id.* at *9. Because OSS thus failed to raise a genuine issue of material fact regarding whether FMC's accused devices met the "divert" limitations of the OSS Patents, the district court granted summary judgment to FMC and entered a final judgment in FMC's favor, which OSS elected not to appeal. J.A. 10671–72; Appellee's Br. 20. The district court noted that it did not base its ruling "on a consideration of whether Voss's infringement opinions are correct or incorrect, or whether competing opinions are more persuasive." *OneSubsea*, 2020 WL 7263266, at *7. Instead, the district court based "its ruling on the absence of sufficient relevance and reliability, which render the [Mr. Voss] opinions unlikely to assist the jury." *Id.*

On January 11, 2021, FMC filed a motion for Attorneys' Fees and Non-Taxable Costs under 35 U.S.C. § 285, which provides that a district court "in exceptional cases may award reasonable attorney fees to the prevailing party." The Supreme Court defined an exceptional case under § 285 as "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). District courts are directed to determine if a particular case is exceptional on a case-by-case basis, in the exercise of the district court's

discretion, taking account of the totality of the circumstances. *Id.* A § 285 movant must prove its case by a preponderance of the evidence. *Id.* at 557–58.

FMC's § 285 motion argued that this case demonstrates that OSS's "substantively weak infringement claims" and "litigation misconduct," J.A. 10680, satisfy the test for an exceptional case, J.A. 10685–706. Regarding the alleged substantive weakness, FMC argued that the district court's *Markman* Order foreclosed any legitimate diverter infringement claims going forward, thus making OSS's litigation position on infringement objectively baseless. FMC also argued separately that the substantive weakness of OSS's infringement claims is shown by OSS's failure to produce any admissible evidence in support of its position. With regard to litigation misconduct, FMC faulted OSS for presenting an expert witness who disregarded the district court's claim constructions and for misrepresenting to FMC which of the infringement claims had been dropped throughout the litigation. FMC alleged additional litigation misconduct by OSS as unreasonably prolonging the case by (1) filing suit originally in the Eastern District of Texas, (2) not promptly providing final contentions of infringement, (3) making late-stage changes to its infringement theory, and (4) ignoring the import of the PTAB rulings.

OSS responded to the charge of a substantive weakness based solely on the *Markman* Order by emphasizing that FMC's 2016 summary judgment motion was not granted when the district court stated that it was unclear from the record that FMC's motion would be granted. For OSS, the unwillingness of the district court to end the case following the *Markman* Order undermined FMC's assertion that the infringement case was so objectively baseless in light of the claim constructions that OSS's continuation made the case exceptional under *Octane Fitness*. Although OSS's evidence—Mr. Voss's expert report—was ultimately found inadmissible, OSS argued that the evidence had been

adduced in good faith.  As for FMC's allegations of litigation misconduct, OSS pointed out that FMC only raised a challenge to Mr. Voss's expert report for the first time in its reply to OSS's response to FMC's 2020 motion for summary judgment, and that OSS had not misled FMC about which claims had been dropped.  As to FMC's allegations that OSS had unreasonably prolonged the litigation, OSS pointed out that FMC did not object initially to the case proceeding in the Eastern District of Texas, and even filed its counterclaims in that district, agreeing that venue was proper there.  J.A. 10909.  OSS noted that FMC had demanded that OSS produce its infringement contentions before the date required by the district court's scheduling order, and that in any event FMC was on notice of OSS's infringement contentions as early as August of 2016 when it responded to FMC's initial motion for summary judgment.  OSS denied changing its infringement theory, by pointing to its briefing on the 2016 summary judgment motion, where it described FMC's Flow Module as "separate" and "retrievable," and pointed out that the first portion of the first flowpath is identified "before a Flow Module is installed."  J.A. 10934–35.  Finally, OSS responded to FMC's charge that OSS engaged in litigation misconduct by refusing to reevaluate its case in light of the PTAB decisions—which invalidated certain diverter claims in patents other than the diverter claims before the district court in 2020—by pointing out that the patents before the district court in 2020 were different from the ones before the PTAB, and the PTAB decisions relied on evidence different from that presented to the district court.  J.A. 10935.

Briefing on FMC's § 285 motion concluded on March 2, 2021, and two days later, the district court announced that the case had been reassigned to the docket of Judge Alfred H. Bennett, following Judge Atlas's retirement. J.A. 11169.  The only remaining matter on the case docket was FMC's § 285 motion.  FMC raised no objection to having Judge Bennett rule on the motion during the six

months between the case reassignment and Judge Bennett's decision on the motion on September 27, 2021.

Stating and applying the test set by *Octane Fitness*, the district court denied FMC's § 285 motion. *OneSubsea*, 2021 WL 5121651, at *2–5. The district court flatly rejected FMC's view that OSS's case was objectively baseless going forward after the claim construction order: "The Court cannot say that Plaintiffs' infringement claims were 'objectively baseless' after the court released its *Markman* Order, or that Plaintiffs should have recognized such, when the Court could not determine the same despite the benefit of its [*Markman*] Order, Defendant's Motion for Summary Judgment of Non-Infringement, and Plaintiffs' Response." *Id.* at *3. The district court also rejected FMC's contention that rejection of OSS's evidence, which was based on Mr. Voss's opinions, demonstrated the substantive weakness of OSS's case, noting that FMC offered no case in which "a court awarded fees based on a party's offering of, and primary reliance on, evidence that was ultimately found to be inadmissible." *Id.*

The district court rejected FMC's claim of litigation misconduct on account of Mr. Voss's failure to have recognized the parties' stipulated construction of "tree," because FMC raised the matter late in the litigation—in its reply to OSS's opposition to FMC's summary judgment motion—and because OSS had argued that the Flow Module was a removable part of FMC's tree "rather than its own tree," which weighed "against a finding of bad faith." *Id.* at *4. On FMC's challenge that OSS had misrepresented which claims had been dropped throughout the litigation, the district court found that the evidence showed that OSS proposed dropping certain claims, but not that the parties reached agreement on OSS's proposals. *Id.* The district court found that the evidence also showed that the parties made inconsistent statements regarding which claims were at issue and attempted to remedy those statements. *Id.* "Given the large number of patents, claims, and

counterclaims at issue in the case," the three-year stay during PTAB proceedings, and additional procedural complexities, the district court rejected this ground of alleged litigation misconduct. *Id.*

The district court further rejected FMC's claim that OSS had unreasonably prolonged the litigation. *Id.* at *5. The district court explained that FMC admitted the venue was proper in the Eastern District of Texas, where FMC filed its counterclaims, and FMC failed to cite any authority treating opposition to transfer a case to a more convenient forum as litigation misconduct. *Id.* The district court found that OSS had not erred with regard to the timing of presentation of its infringement contentions. *Id.* The district court also rejected FMC's allegation that OSS had made late-stage changes in its theory of infringement, noting that OSS's theory was stated as early as August 2016 in response to FMC's initial summary judgment motion. *Id.* Finally, the district court agreed with OSS that it had no obligation to revise its litigation strategy just because the PTAB had invalidated diverter claims in different patents. *Id.*

In conclusion, the district court denied FMC's § 285 motion, with its overall reflection on the case:

> There is no question that Plaintiffs utilized an aggressive litigation strategy in this case. But it cannot be said that Defendant's strategic decisions, such as the requested IPR proceedings and which claims to request IPRs for, did not have significant impacts on the trajectory of this litigation and the resources expended for it. Industry competitors zealously advocating their positions often results in resource- and time-intensive litigation. But that alone is insufficient to make a case "exceptional," and the prevailing competitor is not entitled to fees simply because it won the hard-fought case. Having considered the totality of the circumstances,

the Court finds that Defendant has failed to show that Plaintiffs' claims were exceptionally meritless or that their actions were unreasonable such that an award of fees and non-taxable costs is warranted under Section 285. Accordingly, the Motion is hereby DENIED.

*Id.*

FMC timely appealed the final order denying its § 285 motion, and we have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

A district court may award attorney fees and non-taxable costs to the prevailing party if it determines that the case is exceptional. 35 U.S.C. § 285. A patent case is exceptional if it "stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated," and "[d]istrict courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness*, 572 U.S. at 554. A party seeking fees under § 285 must prove its case by a preponderance of the evidence. *Id.* at 557–58. Because whether a patent case is exceptional is decided as a matter of discretion by a district court, the decision of the district court is reviewed for abuse of discretion. *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 564 (2014). The abuse-of-discretion standard of review directs the reviewing court to accept the district court's decision unless "the district court has made 'a clear error of judgment in weighing relevant factors or in basing its decision on an error of law or on clearly erroneous factual findings.'" *Bayer CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1306 (Fed. Cir. 2017) (quoting *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 150 F.3d 1374, 1377 (Fed. Cir. 1998)); *see also Highmark*, 572 U.S. at 563 n.2.

I

As an initial matter, FMC suggests that we should reject the abuse-of-discretion standard of review required by *Highmark*, and instead apply de novo review to the decision denying its § 285 motion. Its suggestion derives from one of the Supreme Court's grounds in *Highmark* for imposing the abuse-of-discretion review standard, which is the fact that "the district court 'is better positioned' to decide whether a case is exceptional . . . because it lives with the case over a prolonged period of time." *Highmark*, 572 U.S. at 564 (quoting *Pierce v. Underwood*, 487 U.S. 552, 559–60 (1988)). Judge Bennett replaced Judge Atlas at the end of the case and decided the motion on the written record made before Judge Atlas. Because Judge Bennett only briefly "lived with the case," FMC believes Judge Bennett sitting as the district court should be disqualified from exercising discretion in deciding FMC's § 285 motion. Appellant's Br. 38–39. FMC in essence maintains that we are better positioned than Judge Bennett to decide the merits of the motion based on the written record made before Judge Atlas.

FMC overlooks the substantial body of law in which appellate courts have consistently reviewed successor judges' decisions on discretionary issues for abuse of discretion. In an analogous case from the Ninth Circuit, one judge presided over trial and final judgment before fully retiring from the bench, and the case was reassigned to a different judge who subsequently denied a motion for costs, a discretionary matter. *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1249 (9th Cir. 2014). On appeal, the party that was denied costs argued the appellate court should review the district court's costs order with "skepticism" and "not afford it the benefit of any deference" because the successor judge had no more familiarity with the underlying facts than the appeals court. *Id.* The Ninth Circuit disagreed, finding "no reason to apply a heightened standard of review" to the successor judge's order denying costs and

affirmed under the abuse-of-discretion standard. *Id. See also Atl. Specialty Ins. Co. v. Coastal Env't Grp. Inc.*, 945 F.3d 53, 63–65 (2d Cir. 2019); *United States v. Chapman*, 851 F.3d 363, 383 n.11 (5th Cir. 2017); *Marantz v. Permanente Med. Grp., Inc. Long Term Disability Plan*, 687 F.3d 320, 327 (7th Cir. 2012); *United States v. Soto*, 48 F.3d 1415, 1421 (7th Cir. 1995); *United States v. Bourgeois*, 950 F.2d 980, 987–88 (5th Cir. 1992).

Similarly, the circuits have uniformly held that when a successor judge reconsiders an interlocutory order entered by the original judge under Federal Rule of Civil Procedure 54(b), the reconsideration decision by the successor judge receives the same deferential review on appeal as the original judge would have received. *See, e.g.*, *Stoffels ex rel. SBC Tel. Concession Plan v. SBC Commc'ns, Inc.*, 677 F.3d 720, 727–30 (5th Cir. 2012); *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011); *Langevine v. District of Columbia*, 106 F.3d 1018, 1023 (D.C. Cir. 1997); *Amarel v. Connell*, 102 F.3d 1494, 1515 (9th Cir. 1996); *In re United States*, 733 F.2d 10, 13–14 (2d Cir. 1984).

The only authority FMC cites to support abandonment of the abuse-of-discretion standard of review in this case are two outlier cases in which the reviewing court decided not to apply a deferential standard of review. In both of those cases, the credibility of witnesses was deemed material to the outcome of the cases. In one, *Henry A. Knott Co. v. Chesapeake & Potomac Telephone Co.*, 772 F.2d 78, 79–80 (4th Cir. 1985), a magistrate judge who heard witness testimony that was transcribed recused himself and was replaced by a judge who made fact findings based on the testimony as recorded in the transcripts, without giving the parties an opportunity to object and resubmit evidence. The reviewing court found the normal clearly erroneous standard of review for factual findings by the successor judge was inappropriate because the factual findings depended on credibility determinations. *Id.* at 87. Because the successor judge could not assess witness credibility

18    ONESUBSEA IP UK LIMITED v. FMC TECHNOLOGIES, INC.

based on a review of the transcript, the reviewing court remanded the case for a new trial. *Id.* In the other case, *Bankcard America, Inc. v. Universal Bancard Systems, Inc.*, 203 F.3d 477, 479 (7th Cir. 2000), the district court judge who entered judgment in a jury trial case later assumed senior status and was replaced by a circuit court judge sitting by designation as a district court judge. The successor judge granted a motion for a new trial. *Id.* On appeal following the new trial, the reviewing court declined to apply the usual abuse-of-discretion standard of review to the successor judge's grant of the motion for a new trial. *Id.* at 481. Citing *Henry A. Knott*, the appellate court found that customary deference was not warranted given the "unique circumstances of this case." *Bankcard*, 203 F.3d at 480–81; *see id.* at 481 ("Because [the successor judge] did not preside over the first trial, he enjoyed no special advantage in determining [witness] credibility and gauging the evidence . . . .").

We reject FMC's invitation to abandon the abuse-of-discretion standard of review for this case. The only authority cited by FMC for support is clearly inapposite, and *Highmark* as well as substantial other authority favors application of the abuse-of-discretion review standard. FMC points to no issue in the case while pending before Judge Atlas that turned on the credibility of testimony. Judge Atlas did not have the "special advantage" of assessing the credibility of witnesses and gauging the evidence through that lens. FMC had ample notice that a successor judge would decide its § 285 motion and did not object. Necessarily, the merits of the motion had to be judged on the basis of the written record. FMC offers no reason why this court is better positioned than Judge Bennett to decide its motion.

II

FMC's primary argument for treating OSS's case as exceptional is its view that the case was entirely objectively

baseless as soon as the district court defined the divert/diverter limitations, and that OSS pursued the litigation thereafter in misconduct. In addition, FMC alleges that the district court made legal errors in reaching its judgment and made clearly erroneous fact findings by misunderstanding the written record.

FMC's primary argument wholly lacks merit, because it fails to come to grips with the district court's observation that FMC's demand for a prompt favorable noninfringement judgment based only on the *Markman* Order was "unpersuasive" because it was "unclear from the current record whether FMC's dispositive motion would be granted." J.A. 6582. By the time of that observation, the district court had heard the theory of OSS's case, as expressed in OSS's tutorial, repeated by OSS during the *Markman* hearing, and evidenced by Mr. Boyadjieff's declaration, which carefully mapped each limitation of claim 1 of the '687 Patent onto FMC's accused device. At the conclusion of the *Markman* hearing, when OSS counsel summed up the OSS view of the claimed flowpaths, the district court retorted, "Okay. I got it. I understand." J.A. 2443–44. And three years later, at a hearing on restarting the litigation, the district court recalled that OSS "had an expert to raise a fact issue" at the time of the first motion for summary judgment, J.A. 6926, and when responding to FMC's reference to the then record in the case as adequate for summary judgment, the district court said to FMC's counsel: "And you really think I'm going to be able to grant summary judgment on that?" J.A. 6934. There can be no doubt that the district court was unwilling to grant summary judgment to FMC in 2016 and willing to allow the case to proceed. When a district court, fully aware of the competing contentions of the parties, declines to end the case on summary judgment and allows a plaintiff's case to proceed, the district court may have effectively determined that the position of the party opposing summary judgment is not objectively baseless, making it nearly

impossible for the plaintiff's case (on the issue that was the subject of the summary judgment motion) to "stand out" as lacking substance at that time.

FMC makes a failing attempt to neuter the importance of the district court's view of the case immediately following the *Markman* Order. FMC argues that in denying its § 285 motion, Judge Bennett factually erred by misunderstanding the observation by Judge Atlas that it was unclear whether FMC's motion would be granted. FMC points out that the observation came in the decision to stay the case, which happened shortly after briefing on the summary judgment motion was completed. FMC hypothesizes that the district court would not have had enough time to know the record well enough to make such an observation meaningfully. This hypothesis is without merit: at the conclusion of the *Markman* hearing, the district court indicated that it understood OSS's arguments and three years later could recall that it had been unable to grant summary judgment after the *Markman* Order.

In addition, FMC argues that the order staying the case stated that the district court was reserving interpretation of other claim terms pending the stay, and therefore that somehow the lack of interpretation for those claims formed some of the basis for the observation that FMC's summary judgment motion was insufficient. This too is without merit, because the district's court's observation was directed solely to the merits of FMC's summary judgment motion, in which FMC was demanding an immediate decision. Reserving other claims for later adjudication had nothing to do with the grounds for FMC's motion or its merit. Unable to neuter the consequences of the district court's permission to let the case proceed, FMC has no ground on which to claim that OSS's case was, from the *Markman* Order on, so substantively empty as to make the case exceptional for § 285 purposes.

Even if OSS's case going forward did not lack substantive merit, FMC argued below, and again here, that the ultimate failure to produce admissible evidence to support OSS's infringement theory alone makes this case exceptional. The district court disagreed, as do we. As the district court noted, this is not a case in which OSS produced no evidence at all to support its case from the early stage of the case in 2016 through the 2020 summary judgment proceeding. OSS produced evidence from two experts, with the evidence based on the first expert's declaration sufficient to undermine FMC's initial summary judgment motion. The second expert's report, on which OSS's challenge to FMC's 2020 summary judgment motion relied, repeated the same theory of infringement as the first expert. The second expert, however, emphasized the retrievability of FMC's Flow Module, leading the expert into the error of failing to appreciate the stipulated construction of "tree," which in turn led to the district court's exclusion of the expert's report. As the district court noted, OSS adduced evidence to support its infringement theory, but the shortcomings of its expert undermined the admissibility of that evidence. In the district court, FMC did not offer any authority for finding a case exceptional simply because a party offered and relied on evidence that was ultimately found to be inadmissible. FMC has likewise produced no such authority here. There was no abuse of discretion in the district court's finding that OSS's reliance on inadmissible evidence failed to make this case exceptional.

At the district court, FMC asserted several grounds of alleged litigation misconduct: (1) OSS's expert's failure to have considered the stipulated construction of "tree," (2) OSS's misrepresentation of which of their infringement claims had been dropped throughout the litigation, and OSS unreasonably prolonging the case by (3) filing suit in the Eastern District of Texas, (4) not promptly providing final infringement contentions, (5) making late-stage changes in its infringement theory, and (6) ignoring the

22    ONESUBSEA IP UK LIMITED v. FMC TECHNOLOGIES, INC.

impact of the PTAB proceedings.  As noted above, the district court carefully reviewed each of these alleged examples of litigation misconduct and rejected them all as without merit.  In its briefs before this court, FMC makes multiple references to OSS "prolonging" the litigation, Appellant's Br. 3, 4, 9–11, but does not specifically challenge the district court's rulings on the specific examples as a ground for reversal of the decision denying § 285 relief.  We nonetheless have subjected each of the findings to clear-error review and detect no such error.

Finally, FMC argues that the district court misapplied the *Octane Fitness* standard for assessing whether a case is exceptional under § 285.  Specifically, FMC refers to a passage in the district court's opinion discussing FMC's charge that a reasonable pre-suit investigation by OSS would have revealed the baselessness of its assertion against FMC of certain diverter claims with "coaxial" flow-paths or "bypass conduit" limitations.  *OneSubsea*, 2021 WL 5121651, at *3.  In its brief to the district court, FMC had argued that "any reasonable litigant conducting an adequate pre-suit investigation" would have known the baselessness of the assertions.  J.A. 10695–96.  Responding to FMC's argument, the district court's opinion stated that FMC had not "offered any evidence that no reasonable litigant would agree with Plaintiffs' understanding of the terms and interpretation of the images, especially at the early stage of a pre-suit investigation." *OneSubsea*, 2021 WL 5121651, at *3.  FMC contends that the district court created a "no reasonable litigant" test for assessing exceptionality and thereby deviated from the *Octane Fitness* standard.  Appellant's Br. 27–28.  FMC's contention is wrong: the district court was simply replying to and rejecting FMC's argument in FMC's own words.  The district court correctly applied *Octane Fitness*'s test for judging the strength of a legal position.

CONCLUSION

The district court properly applied *Octane Fitness* in denying FMC's § 285 motion. After careful review of the record and all of FMC's arguments, we hold that FMC has shown no error in the district court's discretionary decision that OSS did not present an exceptional case to the district court.

**AFFIRMED**

COSTS

Costs to Appellee.